**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **NAEEM WALLER,**<br>　　　　　*Plaintiff,*<br><br>　　　**v.**<br><br>**CITY OF PHILADELPHIA et al.,**<br>　　　　　*Defendants.* | **Civil No. 24-2235** |

**<u>MEMORANDUM</u>**

**Costello, J.**　　　　　　　　　　　　　　　　　　　　　　**March 30, 2026**

　　　Plaintiff Naeem Waller brings this Section 1983 action to recover for alleged

constitutional violations committed by Defendants during their investigation into and prosecution

of Plaintiff in connection with a 2002 murder.  Plaintiff contends that Defendants fabricated

evidence against him and deliberately concealed other crucial evidence in violation of his rights

under the Fourteenth Amendment to the United States Constitution.  Defendants moved to

dismiss.  For the reasons that follow, the Court will grant in part and deny in part Defendants'

motion.

**I.　　　BACKGROUND**

　　　**A.　　Plaintiff's Arrest, Prosecution, and Conviction**

　　　On April 12, 2002, Brian Birkelback was murdered on rising Sun Avenue and Gilham

Street in Philadelphia.  ECF No. 18 ¶ 18.  Birkelback was in a vehicle with two other individuals

when three men approached the vehicle and asked if they wanted to purchase marijuana.  *Id.* ¶

19.  Birkelback got out of the car and a fight ensued.  *Id.* ¶ 20.  One of the three men fired a gun

at Birkelback, striking him in the back and killing him.  *Id.* ¶ 21.

Police arrested Plaintiff in connection with the Birkelback murder in June 2002. *Id.* ¶ 28. One of the individuals in the car initially identified someone other than Plaintiff as the murderer, but the other individual in the car eventually told police that Plaintiff was involved in the crime. *Id.* ¶¶ 26-28.

Plaintiff and co-defendant Devin Rouse were tried in the Philadelphia Court of Common Pleas in November 2003 and April 2004, with both trials ending in a hung jury. On December 17, 2004, following a third trial, the jury convicted Plaintiff and Devin Rouse of second-degree murder, robbery, carrying a firearm without a license, and possessing instruments of crime in connection with the killing of Birkelback. *Comm. v. Waller*, 51-CR-0713201-2002 at 2 (Ct. Comm. Pls. Phila. Cnty. Aug. 9, 2022). Plaintiff was sentenced to life without the possibility of parole. *Id.* The Commonwealth's case against Plaintiff heavily relied on the testimony of Tyron Rouse, who Plaintiff alleges suffers from a variety of mental health challenges, including schizophrenia. ECF No. 18 ¶ 32.

Plaintiff alleges that there were several defects in the Birkelback murder investigation and subsequent prosecution of Plaintiff. First, Plaintiff alleges that Defendants fabricated evidence against him. Namely, he alleges that Detective Dusak, the lead detective on the Birkelback investigation, coerced a false statement out of Tyron Rouse, a witness who allegedly heard Plaintiff confess to the murder while both were in pre-trial detention. *Id.* ¶ 71 (alleging Defendants fabricated the statement and trial testimony of Tyron Rouse); *id.* ¶ 35 (alleging that Detective Dusak and another detective on the case, William Gross, "made affidavits for arrest and search warrants that were based on fabricated evidence and/or coerced statements"). Plaintiff also implies that Defendants falsified a witness identification of Plaintiff as Birkelback's killer during the initial investigation. *See id.* ¶¶ 23-27 (alleging that two witnesses initially said

they could not identify the assailants, then stated the assailant was a Puerto Rican male, identified someone else in a lineup, then "eventually" gave a statement identifying Plaintiff).

Second, Plaintiff alleges that Defendants deliberately concealed/suppressed certain critical evidence.  Plaintiff specifically contends that Defendants intentionally concealed (1) evidence that Tyron Rouse suffered from significant mental illness, including schizophrenia, which Plaintiff argues renders his statement about Plaintiff's purported confession unreliable, *id*. ¶¶ 4-5, 31-32; (2) evidence that another witness, Christina Walton, told Detective Dusak that she knew another individual named "Stan" to be Birkelback's killer, *id.* ¶ 38; and (3) evidence that Detective Dusak had an extensive history of investigatory misconduct, including fabricating evidence and coercing false witness statements in murder cases, *id*. ¶¶ 33-34.

### B.      Plaintiff's PCRA Petition

In 2015, Plaintiff filed a petition to vacate his conviction under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  The petition was based in part on after-discovered evidence.  Specifically, an affidavit by witness Timothy Moses stating that a separate individual named "Stan" confessed to killing Birkelback immediately after the murder.  *Id*. ¶ 36. The petition also argued that detectives improperly withheld evidence of Tyron Rouse's mental health issues and that, in addition to Rouse's eventual recantation of his statement implicating Plaintiff, warranted a new trial.  *Comm. v. Waller*, 2021 WL 786400, at *1 (Pa. Super. Ct. Mar. 1, 2021).

The PCRA Court found that Moses's affidavit was based on inadmissible hearsay and could not serve as the basis for a petition to vacate Plaintiff's conviction.  *Comm. v. Waller*, 51-CR-0713201-2002 at 7-8 (Ct. Comm. Pls. Phila. Cnty. Dec. 24, 2019) (hereinafter "PCO").  The Court also rejected Plaintiff's arguments about Tyron Rouse's mental health history.  It

concluded that evidence of that history was not "after-discovered evidence" warranting a new trial, and that the mere existence of mental health issues is not impeachment evidence required to be turned over under *Brady*. *Id.* at 8-13.

On appeal, the Superior Court reversed the PCRA Court's ruling regarding Moses's affidavit, concluding that the remarks likely qualify for the hearsay exception for excited utterances. *Waller*, 2021 WL 786400, at *7-8 (remanding for evidentiary hearing on that issue). The Court left undisturbed the PCRA's ruling with respect to evidence concerning Rouse's mental health. *Id.* at *8. On remand, and after an evidentiary hearing, the PCRA Court found that Rouse's statement was admissible after-discovered evidence and granted Plaintiff a new trial on this basis but did not revisit the mental health arguments. *Comm. v. Waller*, 51-CR-0713201-2002 at 5 (Ct. Comm. Pls. Phila. Cnty. Aug. 9, 2022).

The Commonwealth appealed but then withdrew that appeal in December 2022. *See* ECF No. 18 ¶ 40. Though Plaintiff's conviction had been vacated, he remained incarcerated. *Id.* "After having spent more than two decades in state prison for a crime [Plaintiff maintains that] he did not commit," he accepted a deal wherein he pleaded guilty to a lesser crime and was released from prison. *Id.* ¶¶ 40-41.

### C.    Plaintiff's Section 1983 Claims

Plaintiff now brings this action under 42 U.S.C. § 1983. He asserts four claims. First, Plaintiff asserts that the individual officer Defendants violated his Fourteenth Amendment due process rights by fabricating evidence and deliberately concealing other key evidence against him. *Id.* ¶¶ 65-68. Second, he asserts that the individual Defendants conspired to violate his due process rights by working together to fabricate and deliberately conceal evidence. *Id.* ¶¶ 69-72. Third, Plaintiff alleges that all individual Defendants had the opportunity but failed to intervene

to prevent the fabrication and concealment of evidence in the case against him. *Id.* ¶¶ 73-76. Finally, Plaintiff alleges that the City of Philadelphia had a policy, practice, or custom of "unconstitutional misconduct in homicide and other criminal investigations," including using coercive techniques to obtain fabricated confessions and witness statements and the withholding of exculpatory evidence. *Id.* ¶ 78. He also alleges that these practices were "allowed to flourish" because the City's police department and district attorney's office "declined to implement sufficient training and/or any legitimate mechanisms for oversight or punishment." *Id.* ¶ 81.

### D.  Defendants' Motion to Dismiss

Defendants moved to dismiss. *See generally* ECF No. 28. They raise four primary arguments. First, Plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1993), because they imply the invalidity of his conviction, and Plaintiff accepted the validity of that conviction when he pleaded guilty. ECF No. 28 at 10-14. Second, Plaintiff's claims related to the alleged suppression of Tyron Rouse's mental health history are barred by issue preclusion because the PCRA Court already considered and rejected those arguments. *Id.* at 15-17. Third, the individual Defendants are entitled to qualified immunity because there was no clearly established right to disclosure of a witness's mental health records or a detective's alleged misconduct. *Id.* at 17-22. Fourth, Plaintiff's claims for civil rights conspiracy, failure to intervene, and municipal liability all fail because there is no actionable underlying constitutional violation. *Id.* at 22-23.

Plaintiff opposed the motion and refutes the first three of Defendants' arguments. *See* ECF No. 29.[1] First, Plaintiff argues that his guilty plea does not undermine the fact that his

---

[1] Plaintiff's opposition does not address Defendants' fourth argument about the sufficiency of his allegations supporting an underlying constitutional violation. *See generally id.*

initial criminal conviction was vacated.  Thus, *Heck* does not bar his claims related to the alleged due process violations in the proceedings leading to that initial conviction.  *Id.* at 4-7.  Second, Plaintiff contends that collateral estoppel does not bar his claims regarding Tyron Rouse's mental health history because intervening facts mean that Plaintiff has not yet had a full and fair opportunity to litigate the issue.  *Id.* at 7-9.  Third, Plaintiff argues that the individual Defendants are not entitled to qualified immunity because at the time of the investigation and trial he had a clearly established right to a trial free from suppressed and/or fabricated evidence.  *Id.* at 9-11.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads facts sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

Assessing plausibility under *Twombly* requires three steps.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, the Court must "take note of the elements the plaintiff must plead to state a claim."  *Id.* (internal quotations and alterations omitted).  Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, the Court must accept as true all "'well-pleaded factual allegations,'" draw all reasonable inferences from those allegations, and "'determine whether they plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alterations omitted).  "If the well-pleaded facts do nut nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint."

*Lynch v. Tasty Baking Co.*, 23cv4445, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

In deciding a motion to dismiss, courts generally consider only the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). This includes judicial proceedings and opinions. *Thomas v. City of Philadelphia*, 24cv4914, 2025 WL 607544, at *3 (E.D. Pa. Feb. 25, 2025) (citing *McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir. 2009)).

## III.   DISCUSSION

### A.   Whether Plaintiff's Claims are Barred by *Heck v. Humphrey*

Defendants argue that all of Plaintiff's claims are barred under *Heck* because they necessarily imply the invalidity of his second conviction, *i.e.*, his guilty plea. *See* ECF No. 28 at 11-13.

#### 1.   The *Heck* Doctrine & "Two-Conviction Cases"

"The favorable termination rule, commonly referred to as the *Heck* Doctrine precludes a plaintiff from recovering on their Section 1983 action in some circumstances." *Gaskins v. City of Philadelphia*, 806 F. Supp. 3d 507, 516 (E.D. Pa. 2025). In *Heck v. Humphrey*, the Supreme Court held that a plaintiff may not "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless that conviction or sentence has already been invalidated. 512 U.S. at 486-87. "Stated differently, courts must evaluate whether a Section 1983 judgment in favor of the plaintiff would necessarily imply the invalidity of an extant conviction or sentence—if it would, the complaint must be dismissed." *Gaskins*, 806 F. Supp. 3d at 516.

7

The Third Circuit has not addressed how *Heck* applies in "two-conviction cases," *i.e.*, where a criminal defendant's "original sentence was properly invalidated, but who, in the face of a new trial, subsequently pleads to a lesser charge—the elements of which overlap the original invalid conviction." *Id.* at 517. However, courts in this District have coalesced around a two-step approach, which asks "(1) what is the effect, if any, of the particular § 1983 action as well as the second conviction; and (2) has the conviction or sentence been invalidated[?]" *Gladden v. City of Philadelphia*, 21cv4986, 2022 WL 605445, at *4 (E.D. Pa. Feb. 28, 2022) (Kearney, J.) (internal quotations omitted); *accord Natividad v. Raley*, 22cv5061, 2025 WL 1550740, at *5 (E.D. Pa. May 30, 2025) (Pappert, J.); *Thomas v. City of Philadelphia*, 24cv4914, 2025 WL 607544, at *5 (E.D. Pa. Feb. 25, 2025) (Pappert, J.); *Carson v. City of Philadelphia*, 23cv2661, 2024 WL 3792223, at *4 (E.D. Pa. Aug. 13, 2024) (Sánchez, J.); *Maldonado v. City of Philadelphia*, 22cv3474, 2023 WL 4685967, at *6-7 (E.D. Pa. July 21, 2023) (Murphy, J.); *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 428-29 (E.D. Pa. 2019) (Robreno, J.).

In two-conviction cases alleging fabrication of evidence and deliberate deception claims under Section 1983, these courts have found that the claims are not barred by *Heck* because they concern "only the *fairness* of the first trial," not the plaintiff's guilt or innocence. *See Natividad*, 2025 WL 1550740, at *4; *see also Gaskins*, 806 F. Supp. 3d at 517 ("fabrication of evidence claims only bear on the conviction in which the alleged violation occurred and not on a subsequent conviction"); *Dennis*, 2023 WL 7174221, at *3-4 ("fabricated evidence and deliberate deception 'thwart the basic purposes of due process and work to deny an individual a fair trial" and therefore "do not require favorable determination") (citing *Dennis*, 379 F. Supp. 3d at 430).

This approach comports with common sense.  As Judge Weilheimer explained in a recent two-conviction case, if a subsequent guilty plea always implies the invalidity of a prior conviction, that would create a perverse incentive structure.  A municipality or its agents would be "able to disclaim Section 1983 liability by presenting the wrongfully convicted with the Hobson's choice of: (1) the hazard of a new trial; or (2) accept release by way of pleading to a lesser charge—waiving the right to redress for civil rights violations that precipitated the incarceration in the first place."  *Gaskins*, 806 F. Supp. 3d at 517-18.  Municipalities would "always opt for this sort of procedural immunity in two-conviction cases—permitting release but shielding itself from liability with the subsequent 'release-plea.'"  *Id.* at 518.

### 2.      Application of *Heck* to the Present Case

This is a two-conviction case.  Plaintiff was initially convicted of second-degree murder, but the PCRA Court invalidated that conviction and Plaintiff subsequently pleaded guilty to a lesser offense to secure his release from custody.  ECF No. 18 ¶¶ 40-41.

Plaintiff alleges that he was denied the right to a fair trial during the proceedings leading to his first conviction because Defendants fabricated and deliberately concealed crucial evidence.  *See id.* ¶¶ 65-68.  All of his claims thus implicate basic due process concerns about the fairness of his criminal proceedings and have nothing to do with his guilt or innocence.  *See Dennis*, 2023 WL 7174221, at *3-4 (distinguishing between procedural due process claims, which implicate only the fairness of the proceedings, and other types of claims, e.g., malicious prosecution, which would necessarily implicate guilt or innocence for the underlying crime).  Thus, contrary to Defendants' argument, *see* ECF No. 28 at 10-14, Plaintiff's guilty plea has no bearing on the first conviction.  *See Gaskins*, 806 F. Supp. 3d at 517 (plaintiff's subsequent guilty plea "is of no

moment" because it was a "clean conviction on which the alleged violations of his constitutional right to a fair trial would not bear").[2]

Accordingly, Plaintiff's Section 1983 claims are not barred by *Heck*. The Court will deny Defendants' motion on these grounds.

**B.    Whether Collateral Estoppel Precludes Claims Concerning Tyron Rouse's Mental Health History**

Defendants next argue that the Court should dismiss Plaintiff's claims to the extent they are based on the failure to disclose Tyron Rouse's mental health history because that issue is precluded by collateral estoppel. ECF No. 28 at 16.

1.    Collateral Estoppel

"Under the doctrine of issue preclusion, also referred to as collateral estoppel, 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Metro. Edison Co. v. Pennsylvania Pub. Util. Comm'n*, 767 F.3d 335, 350 (3d Cir. 2014) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). This doctrine applies to federal courts reviewing issues decided by state courts. *Id.* The preclusive effect of a state court judgment in a subsequent federal lawsuit is determined by looking to state law. *Id.* at 350-51 (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

The Pennsylvania Supreme Court uses a five-prong test that provides that issues must be given preclusive effect where "(1) the issue decided in the prior case is identical to the one

---

[2] Defendants try to distinguish *Dennis* and its progeny by arguing that the plaintiffs in those cases pleaded no contest, unlike Plaintiff here, who pleaded guilty. *See* ECF No. 28 at 11-12. This distinction is of no import, since a no-contest plea "has the same legal effect as a guilty plea[.]" *Gladden*, 2022 WL 605445, at *5 (finding plaintiff's no-contest plea does not necessarily imply the invalidity of his conviction under *Heck* because his civil rights claim "only bears on the conviction in which the violation occurred").

presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party . . . against whom the doctrine is asserted had a fair and full opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment." *Id.* at 351 (citing *Office of Disciplinary Counsel v. Kiesewetter*, 585 889 A.2d 47, 50-51 (Pa. 2005)).  The party asserting issue preclusion has the burden of proving its applicability to the case and issue at hand.  *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 277 (E.D. Pa. 2022) (internal quotations omitted).

Here, the parties only dispute the fourth element, whether Plaintiff had a full and fair opportunity to litigate the issue in a prior proceeding.  Defendants argue that Plaintiff did, noting that "[t]he PCRA court and the Superior Court both considered and rejected the arguments surrounding Tyron's mental health records."  ECF No. 28 at 16.

Defendants are correct, to the extent Plaintiff's claims are based on an alleged *Brady* violation.  The PCRA court squarely considered and rejected the argument that Tyron Rouse's mental health records were impeachment material under *Brady* and should have been turned over by Defendants.  The PCRA Court held that "[n]othing on the record, and nothing that the Appellant provided, indicates [that] Ty-Ron's mental health problem was the sort that would trigger *Brady*.  As such, Appellant has failed to show that Ty-Ron's mental health problem had impeachable value and his *Brady* claim must fail because it lacks merit."  PCO at 9-10.  On appeal, the Superior Court affirmed that part of the PCRA court's decision.  *See Waller*, 2021 WL 786400, at \*7-8 ("We conclude that the PCRA court's analysis correctly disposes of Appellant's *Brady* and after-discovered evidence claims regarding Ty-Ron's mental health issues . . . Thus, we adopt this portion of the PCRA court's opinion[.]").  Thus, it is clear from the record that this

issue has already been fully litigated.  Collateral estoppel prevents this Court from giving Plaintiff another bite at the apple.  *See Ogrod*, 598 F. Supp. 3d at 276-77; *see also Dici v. Pennsylvania*, 91 F.3d 542, 547 (3d Cir. 1996) ("a losing litigant deserves no rematch after a defeat fairly suffered . . . on an issue identical in substance to the one he subsequently seeks to raise") (internal quotations omitted).

2.      Exceptions to Collateral Estoppel

Plaintiff nevertheless argues that two exceptions to collateral estoppel apply here.  First, Plaintiff argues that he did not receive minimum due process and therefore never had a "fair" opportunity to litigate this issue on the merits.  *See* ECF No. 29 at 8 (citing to caselaw explaining that "[r]edetermination of issues is warranted if there is reason to doubt the . . . fairness of procedures followed in prior litigation").

There is an exception to collateral estoppel for cases where "there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."  *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979); *accord B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 158 (2015).  In the Third Circuit, these circumstances typically arise where "procedures fall below the minimum requirements of due process as defined by federal law.'" *Ogrod*, 598 F. Supp. 3d at 278 (quoting *Witkowski v. Welch*, 173 F.3d 192, 205 (3d Cir. 1999)) (further quotations omitted).

As Defendants point out, Plaintiff's reliance on this exception is quite unusual under the circumstances.  The issue on which Defendants seek collateral estoppel was litigated in the PCRA Court and in subsequent appeals of those proceedings.  These are the same proceedings in which Plaintiff's conviction was overturned.  *See* ECF No. 31 at 8.  Thus, it makes little sense

12

that he would now argue that "the very decision where Plaintiff prevailed was somehow constitutionally unfair." *Id.*

Plaintiff is likely conflating the alleged due process violations in his underlying criminal proceedings with the PCRA proceedings challenging that conviction. The former are relevant to Plaintiff's due process claims he asserts in this action. But the latter proceedings are the relevant ones for the purpose of determining issue preclusion.

*White v. City of Philadelphia*, 2024 WL 2027390 (E.D. Pa. May 6, 2024), a Section 1983 action based on alleged due process violations during the plaintiff's criminal proceedings, is a helpful point of reference. In that case, the defendant moved to dismiss based on collateral estoppel, arguing that the issue of plaintiff's coerced confession was already litigated in a suppression hearing in the underlying criminal proceedings. *White*, 2024 WL 2027390, at *4. The plaintiff responded that he did not have a full and fair opportunity to litigate the issue during the suppression hearing because the defendant did not produce relevant medical records that would support his position that his confession was coerced. *Id.* That alleged procedural infirmity formed part of his Section 1983 claims. *Id.* The court denied defendant's motion to dismiss based on collateral estoppel because the "record at this early stage of the action is not clear as to whether [plaintiff] had a full and fair opportunity to ligate his claim that his confession was coerced." *Id.*

Here, unlike in *White*, Defendants are moving for collateral estoppel on an issue litigated in the later PCRA proceedings—not the underlying criminal proceedings forming the basis for Plaintiff's Section 1983 claims. In other words, Plaintiff is not alleging any procedural infirmities with the PCRA proceedings to fashion his due process claims in this action. Indeed, Plaintiff does not identify any specific due process violations with the PCRA proceedings. *See*

13

ECF No. 8-9 (only generally alluding to unfairness of proceedings, but not identifying which proceedings, or any specific due process violations). Accordingly, there is no "reason to doubt the quality, extensiveness, or fairness of procedures" in those proceedings, so this exception does not apply. *See Montana*, 440 U.S. at 164 n.11.

Second, Plaintiff implicitly argues that a catch-all "extraordinary circumstances" exception applies here. *See* ECF No. 29 at 9 (arguing against finding issue preclusion because "circumstances have changed" and there is "now a vacated conviction on the record, as well as conclusive evidence of the Plaintiff's actual innocence.").

"The Third Circuit has recognized a number of 'extraordinary circumstances' that warrant reconsideration of an issue that was previously decided by the Court in an earlier stage of litigation. Those circumstances include 'situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.'" *Bosley v. The Chubb Institute*, 516 F. Supp. 2d 479, 484 (E.D. Pa. 2007) (quoting *Pub. Interest Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997)). The new evidence must have a material impact on the issue, and must be new, meaning it was learned after the prior decision and could not have been previously discovered. *See Allen v. State Corr. Inst. at Somerset Dep't of Corr.*, 23cv0262, 2025 WL 964550, at *8 (W.D. Pa. Mar. 31, 2025). This exception "ensures equitable administration of the law by preventing a court from giving preclusive effect to an earlier judgment when significant changes in either controlling facts or legal principles have occurred since the earlier judgment." *Id.*

This exception does not apply here. Again, Plaintiff is conflating the relevant proceedings. The PCRA proceedings and subsequent appeals—not the underlying criminal

14

proceedings—matter for determining issue preclusion.  Plaintiff knew about Rouse's mental health history during the PCRA proceedings because he raised those arguments in his petition. *See supra* at 11-12.  Thus, this is not "new" evidence.  *See Allen*, 2025 WL 964550, at *8; *see also Thomas v. Wells Fargo Bank, N.A.*, 22cv2357, 2022 WL 16536239, at *3 (E.D. Pa. Oct. 28, 2022) (declining to apply new evidence exception where evidence was discoverable in prior proceeding and perhaps even in plaintiff's possession at the time of the prior proceeding).

Moreover, Plaintiff has failed to point to a change in the controlling law regarding the relevant legal issue—whether Tyron Rouse's mental health records constitute impeachment evidence under *Brady*.  *See* ECF No. 31 at 9 ("Plaintiff does not explain how the vacated conviction or this conclusive evidence changes the legal issue concerning Tyron's mental health records.").  There have therefore been no "significant changes in either controlling facts or legal principles" warranting reconsideration since the PCRA proceedings.  *See Allen*, 2025 WL 964550, at *8.

3.    Determining the Contours of the Issue Precluded Here

Because the issue of whether Tyron Rouse's mental health history constitutes *Brady* evidence has already been fully and fairly litigated, and no exceptions to collateral estoppel apply, Plaintiff may not reassert those issues in this action.  However, to the extent Plaintiff uses the allegations about Tyron Rouse's mental health history to litigate something different than a *Brady* claim, the issue is not precluded.

As discussed in greater detail below, *infra* at 17-18, Plaintiff appears to be asserting more than a mere *Brady* claim.  Rather, construing his allegations as a whole, Plaintiff is arguing that Defendants deliberately concealed, suppressed, and fabricated evidence in order to secure a conviction for a crime Plaintiff did not commit.  *See* ECF No. 18 ¶ 31-33 (alleging that Plaintiff

was denied the right to a fair trial because Defendants deliberately suppressed evidence of Tyron

Rouse's "significant" mental health challenges along with suppressing and fabricating other

evidence).

This "implicates a broader right" to a fair trial. *See Crosland v. City of Philadelphia*, 676

F. Supp. 3d 364, 373 (E.D. Pa. 2023) (declining to read a plaintiff's allegations that individual

officer defendants deliberately suppressed evidence and knowingly used perjured testimony as a

mere *Brady* claim). The role that the alleged concealment of Tyron Rouse's mental health

history plays in Plaintiff's broader due process claim has not been litigated in any prior

proceedings. *See* PCO at 8-10 (evaluating more limited argument that Tyron Rouse's mental

health history was impeachment evidence under *Brady*).

The Court therefore grants Defendants' motion to dismiss with regards to the narrow

issue of whether Rouse's mental health history was impeachment evidence under *Brady*. But

Plaintiff is not estopped from discussing that issue to assert his broader Fourteenth Amendment

claim.

### C.    Whether the Individual Detective Defendants are Entitled to Qualified Immunity

Defendants next argue that the individual detective Defendants are entitled to qualified

immunity because a criminal defendant's right to disclosure by the police of mental health and

misconduct records as impeachment evidence was not clearly established when Plaintiff was

convicted. ECF No. 28 at 17.

####     1.    Defendants' Framing of Plaintiff's Claims

As an initial matter, Defendants argue that to the extent Count I is based on the alleged

fabrication of evidence, that Plaintiff has failed to allege sufficient facts to state a claim, and

therefore the Court should treat Count I as a *Brady* claim for failure to turn over impeachment evidence. *Id.* The Court disagrees.

To the extent Defendants are trying to raise a 12(b)(6) argument, they have failed to do so. Plaintiff has pleaded sufficient facts to plausibly allege a Fourteenth Amendment claim based on the fabrication of evidence. *See, e.g.*, ECF No. 18 ¶¶ 34-35 (alleging that Detective Dusak has a history of obtaining fabricated statements in murder investigations); *id.* ¶ 71(b) (alleging that Defendants fabricated "the statement and testimony of Tyron Rouse"); *id.* ¶¶ 23-27 (implying that Defendants falsified a witness identification of Plaintiff as Birkelback's killer that was inconsistent with prior witness identifications).

To the extent Defendants are trying to reframe Plaintiff's allegations into exclusively a *Brady* claim, the Court declines to do so. "It is the party suing, not the party sued, who enjoys the right to frame the claims asserted in a complaint." *Dennis v. City of Philadelphia*, 19 F.4th 279, 291 (3d Cir. 2021) (internal quotations omitted); *see also Dennis*, 379 F. Supp. 3d. at 434-35 (declining to recharacterize fabrication/deliberate deception claims as *Brady* claims, noting that, "at the motion-to-dismiss stage, the Court focuses on the allegations in the complaint").

Plaintiff is clearly asserting a broader Fourteenth Amendment claim. He alleges that the individual detective Defendants concealed and suppressed relevant evidence and fabricated evidence as part of a larger conspiracy to convict him of a crime they had reason to believe he did not commit. *See, e.g.,* ECF No. 18 ¶¶ 23-27, 31-33. These allegations are "larger than, and not coterminous with, a *Brady* claim." *Alicea v. City of Philadelphia*, 22cv3437, 2022 WL 17477143, at *4 (E.D. Pa. Dec. 6, 2022). Rather, Plaintiff's allegations implicate the general right to a fair trial. *See Hicks v. City of Philadelphia*, 22cv977, 2023 WL 5278713, at *6 (E.D. Pa. Aug. 16, 2023) (plaintiff's claim that defendant officers concealed and/or suppressed

17

"relevant material evidence as part of a larger scheme to frame him" for a crime is "more than a veiled *Brady* claim" because it "implicate[s] [his] right to a fair trial").

### 2.    Qualified Immunity

Properly construing Plaintiff's claims, it is clear that the individual detective Defendants are not entitled to qualified immunity.

"Qualified immunity shields officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dennis*, 19 F.4th at 287 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Accordingly, to evaluate a qualified immunity defense, the Court must consider "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct.'" *Id.* (quoting *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 241 (3d Cir. 2016)).  "A clearly established right is one that is so apparent that 'every reasonable official would understand that what he is doing is unlawful.'" *Id.* at 288 (quoting *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020)) (further quotations omitted).

"At the pleading stage, 'qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'" *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 668 (E.D. Pa. 2017) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)).  "The burden of establishing qualified immunity falls to the official claiming it as a defense." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011).

Plaintiff's Fourteenth Amendment claim is based in part on his allegations that the individual detective Defendants fabricated evidence against him.  *See, e.g.*, ECF No. 18 ¶¶ 34-35.  The law of this Circuit is clear that there is a "constitutional rule that framing criminal

18

defendants through use of fabricated evidence, including false or perjured testimony, violates their constitutional rights[.]" *Dennis*, 19 F.4th at 290.  This rule applies with equal force to law enforcement officials involved in a criminal investigation as it does to prosecutors during a trial. *Halsey v. Pfeiffer*, 750 F.3d 273, 296 (3d Cir. 2014).  This right has been "clearly established" since at least 1985.  *Dennis*, 19 F.4th at 290 (explaining that in *Halsey*, the Third Circuit held that "the fabrication of evidence by law enforcement officers violates the Fourteenth Amendment" and "such a right had been established since at least 1985").  Accordingly, the right against fabrication of evidence by law enforcement officers was clearly established well before the arrest and prosecution of Plaintiff between 2002 and 2004.  The individual detective Defendants therefore are not entitled to qualified immunity based on claims that they fabricated evidence against Plaintiff.

As for Plaintiff's broader Fourteenth Amendment allegations concerning the fairness of his trial, that right was also clearly established during the relevant time frame.  Defendants' argument to the contrary is based on their unduly narrow framing of Plaintiff's claims as a mere *Brady* violation.  Defendants argue that Brady was not applicable to officers until the Third Circuit's decision in *Gibson v. Superintendent of New Jersey Department of Law and Public Safety – Division of Police*, 411 F.3d 427, 443 (3d Cir. 2005) (overruled on other grounds), which post-dates Plaintiff's conviction in 2004.  *See* ECF No. 28 at 19.

As Judge Murphy explained in a recent case in which individual officer defendants raised this exact qualified immunity argument, district courts in this Circuit are split on whether *Brady* obligations clearly applied to police officers until the *Gibson* decision in 2005.  *See Hicks*, 2023 WL 5278713, at *6 (collecting cases coming out on both sides, including the case on which Defendants primarily rely, *Outlaw v. City of Philadelphia*, 21cv1290, 2021 WL 3471168, at *5-6

(E.D. Pa. Aug. 6, 2021)).  Judge Murphy "decline[d] to wade into these uncertain waters" at the motion to dismiss stage because it was clear that the plaintiff was bringing "more than a veiled *Brady* claim."  *Id.* at *6.  Rather, the plaintiff "more broadly assert[ed] officers denied his right to due process and to a fair trial by concealing and/or suppressing relevant material evidence as part of a larger scheme" to frame him for a crime.  *Id.*  "[T]he allegations implicate[d] the right to a fair trial, which was 'crystal clear' at the time of the officers' alleged misconduct."  *Id.* (quoting *Alicea*, 2022 WL 17477143, at *4).

The same is true here.  As explained above, *supra* at 17-18, Plaintiff pleads his claims as more than a mere *Brady* claim.  Like the plaintiff in *Hicks*, Plaintiff is alleging that the individual officer Defendants concealed and suppressed relevant evidence and fabricated evidence as part of a larger conspiracy to convict him of a crime they had reason to believe he did not commit. *See, e.g.,* ECF No. 18 ¶¶ 23-27, 31-33.  These allegations implicate Plaintiff's broader right to a fair trial.  *See Alicea*, 2022 WL 17477143, at *4; *see also Crosland*, 676 F. Supp. 3d at 373 (denying qualified immunity where plaintiff's claims implicated a "broader right" against police knowingly using false testimony, fabricating evidence, or concealing evidence to secure a conviction); *Dennis*, 19 F.4th at 291 (same).  That right was clearly established well before 2004. *See Hicks*, 2023 WL 5278713, at *6.  Accordingly, qualified immunity does not attach.  The Court will deny Defendants' motion to dismiss on this basis.

**D.     Whether Plaintiff Plausibly Alleges an Underlying Constitutional Violation**

Finally, Defendants argue that Plaintiff's claims for conspiracy (Count II), failure to intervene (count III) and municipal liability (Count IV) fail because Plaintiff cannot establish an underlying constitutional violation.  ECF No. 28 at 22-23.  However, Defendants do not

meaningfully make this argument by explaining why Plaintiff's claims, accepted as true, fail to assert a Fourteenth Amendment violation.

The Court nevertheless finds that Plaintiff's claims are sufficient to state an underlying constitutional violation at this juncture. As described above, *supra* at 17-18, Plaintiff asserts a broad Fourteenth Amendment claim based on Defendants' alleged concealment and fabrication of evidence to deny him his right to a fair trial and secure a conviction for a crime he alleges he did not commit. *See* ECF No. 18 ¶¶ 65-68.

Plaintiff sets forth several allegations which, accepted as true, provide plenty of factual support for his constitutional claim. He alleges that Detective Dusak has a history of obtaining fabricated statements in murder investigations and that Defendants fabricated the investigation statements and trial testimony of the key witness against him. *See* ECF No. 18 ¶¶ 34-35, ¶ 71(b). Plaintiff also alleges that Defendants concealed evidence that another witness, Christina Walton, told Detective Dusak that she knew another individual named Stan to be Birkelback's killer. *Id*. ¶ 38. Plaintiff further alleges that Detective Dusak had an extensive history of investigatory misconduct, including fabricating evidence and coercing false witness statements and testimony, and that Defendants concealed this history. *Id*. ¶¶ 33-34. Plaintiff further implies that Defendants falsified a witness identification of Plaintiff as Birkelback's killer. *See id.* ¶¶ 23-27.

These allegations, accepted as true and drawing all inferences in favor of Plaintiff, *see Iqbal*, 556 U.S. at 679, sufficiently state a Fourteenth Amendment claim. *See, e.g.*, *Lazar v. City of Philadelphia*, 24cv907, 2025 WL 886952, at *5-6 (E.D. Pa. Mar. 21, 2025) (plaintiff sufficiently stated Section 1983 due process claim where he alleged that defendants knowingly used false witness statements and fabricated other statements and a confession); *Hicks*, 2023 WL 5278713, at *6 (plaintiff stated Section 1983 due process claim by alleging that defendants

21

concealed and suppressed relevant material evidence as part of a larger scheme to frame him for a crime he maintained he did not commit); *Crosland*, 676 F. Supp. 3d at 379 (denying motion to dismiss where plaintiff alleged that defendant officers "ignored alternate suspects, knew (or should have known) that [a witness statement] implicating [plaintiff] was false, and concealed this information from prosecutors and defense counsel"). Defendants' motion to dismiss Counts II, III, and IV is therefore denied.

## IV. CONCLUSION

In sum, Defendants' motion to dismiss is granted in part because the Court agrees that collateral estoppel precludes Plaintiff from relitigating the narrow issue of whether Tyron Rouse's mental health history constitutes impeachment evidence under *Brady*. Defendants' motion is denied on all other grounds. An appropriate Order will follow.

BY THE COURT:

MARY KAY COSTELLO
United States District Judge

22